Kathryn Thompson REMMEY, Executrix for the Estate of Louise Remmey; Ernest M. Remmey, Executor for the Estate of Louise Remmey, Plaintiffs–Appellants,

v.

PAINEWEBBER, INCORPORATED; Arnold Marks, Defendants–Appellees.

No. 93–2059.

United States Court of Appeals, Fourth Circuit.

Argued May 11, 1994.

Decided Aug. 19, 1994.

**ARGUED:** David McKenzie Clark, Clark, Wharton & Berry, Greensboro, NC, for appellant. Mack Sperling, Brooks, Pierce,

McLendon, Humphrey & Leonard, L.L.P., Greensboro, NC, for appellees.

Before ERVIN, Chief Judge, WILKINSON, Circuit Judge, and ELLIS, United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed by published opinion. Judge WILKINSON wrote the opinion, in which Chief Judge ERVIN and District Judge ELLIS joined.

## OPINION

WILKINSON, Circuit Judge:

In this case, we are asked to overturn the results of a contractually-compelled arbitration. We decline to do so. Accepting the multiple attacks upon the arbitral process in this case would scuttle the spirit of deference that courts have always used in reviewing arbitral awards. We therefore affirm the judgment of the district court upholding the arbitral decision.

### I.

Louise Remmey, the original plaintiff in this case, maintained an account with appellee Arnold Marks at the brokerage firm of Hornblower & Weeks in the late 1970s. In later years, when Marks joined Paine-Webber, Inc. as a broker, Remmey transferred her account to that firm. Remmey subsequently opened a Resource Management Account ("RMA") at PaineWebber, thereby allowing the company to hold securities for her and creating an interest-bearing checking account into which her dividends could be deposited.

In connection with the RMA, Remmey signed a "Client's Agreement," which included a requirement that controversies between Remmey and PaineWebber be submitted to arbitration. The provision stated essentially that arbitrations would be conducted in accordance with the rules of the New York Stock Exchange, American Stock Exchange, or National Association of Securities Dealers.

Remmey was permitted to elect which organization's rules would govern.

In early 1986, Remmey began using the RMA to keep track of her investments, and accordingly delivered most of her securities to Marks. From that time until late 1989, Marks conducted a series of trades, which substantially changed Remmey's portfolio mix. Most notably, Marks reduced the level of Remmey's ownership of bonds and other debt instruments, while establishing a significant stake in real estate limited partnerships. In August 1989, Marks left PaineWebber for a position at Prudential Bache.

In October 1990, Mrs. Remmey filed this action against Arnold Marks and Paine-Webber in North Carolina federal court. She contended that Marks had knowingly induced her to purchase investments unsuited to her stated objectives and that Marks had "churned" her account by engaging in excessive and unnecessary trading. Paine-Webber responded by pointing to the arbitration clause in the RMA, prompting Remmey to sign a stipulation submitting the case to arbitration and staying the federal court action pending the result. Remmey elected to follow the rules of the National Association of Securities Dealers ("NASD"). In September and December of 1991, a panel of three arbitrators selected by the NASD heard Remmey's claims. After taking evidence for five days, the panel unanimously dismissed all of Remmey's claims against both Marks and PaineWebber.

Shortly thereafter, Remmey moved the district court to set aside the arbitral decision. In support of her motion, Remmey argued that various provisions of the Federal Arbitration Act, 9 U.S.C. §§ 1–16, had been violated. Specifically, Remmey maintained that the arbitrators were biased in favor of Marks and that their ruling was substantively flawed. In an order of July 15, 1993, the district court rejected Remmey's motion, holding that "the award was proper in all respects." Remmey now appeals.[1]

1. On March 20, 1993, prior to the district court's final decision, Mrs. Remmey died. The executors of her estate, Kathryn and Ernest Remmey, were subsequently substituted as plaintiffs. For purposes of this opinion, we will continue to refer to appellant as "Remmey" or "Mrs. Remmey."

## II.

We must underscore at the outset the limited scope of review that courts are permitted to exercise over arbitral decisions. Limited judicial review is necessary to encourage the use of arbitration as an alternative to formal litigation. This policy is widely recognized, and the Supreme Court has often found occasion to approve it. *See, e.g., Shearson/American Express Inc. v. McMahon,* 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987); *Southland Corp. v. Keating,* 465 U.S. 1, 10, 104 S.Ct. 852, 858, 79 L.Ed.2d 1 (1984); *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983).

A policy favoring arbitration would mean little, of course, if arbitration were merely the prologue to prolonged litigation. If such were the case, one would hardly achieve the "twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Folkways Music Publishers, Inc. v. Weiss,* 989 F.2d 108, 111 (2d Cir.1993); *see also Eljer Mfg., Inc. v. Kowin Dev. Corp.,* 14 F.3d 1250, 1254 (7th Cir.1994), *cert. denied,* —— U.S. ——, 114 S.Ct. 2675, 129 L.Ed.2d 810 (1994). Opening up arbitral awards to myriad legal challenges would eventually reduce arbitral proceedings to the status of preliminary hearings. Parties would cease to utilize a process that no longer had finality. To avoid this result, courts have resisted temptations to redo arbitral decisions. As the Seventh Circuit put it, "[a]rbitrators do not act as junior varsity trial courts where subsequent appellate review is readily available to the losing party." *National Wrecking Co. v. International Bhd. of Teamsters, Local 731,* 990 F.2d 957, 960 (7th Cir.1993).

Thus, in reviewing arbitral awards, a district or appellate court is limited to determining " 'whether the arbitrators did the job they were told to do—not whether they did it well, or correctly, or reasonably, but simply whether they did it.' " *Richmond, Fredericksburg & Potomac R.R. Co. v. Transportation Communications Int'l Union,* 973 F.2d 276, 281 (4th Cir.1992) (quoting *Brotherhood of Locomotive Eng'rs v. Atchison, Topeka & Santa Fe Ry. Co.,* 768 F.2d 914, 921 (7th Cir.1985)). Courts are not free to overturn an arbitral result because they would have reached a different conclusion if presented with the same facts. In the Federal Arbitration Act, 9 U.S.C. §§ 1–16, Congress has limited the grounds upon which an arbitral award can be vacated. Namely, a court may vacate an award:

(1) Where the award was procured by corruption, fraud, or undue means.

(2) Where there was evident partiality or corruption in the arbitrators, or either of them.

(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). The statutory grounds for vacatur permit challenges on sufficiently improper conduct in the course of the proceedings; they do not permit rejection of an arbitral award based on disagreement with the particular result the arbitrators reached. Accordingly, parties may not seek a "second bite at the apple" simply because they desire a different outcome. "To permit such attempts would transform a binding process into a purely advisory one." *Richmond, Fredericksburg & Potomac,* 973 F.2d at 282.

Finally, we note that arbitration has often been used to resolve securities laws claims brought by disappointed investors against brokerage houses. If all claims arising out of unprofitable investments were subjected to the full rigors of litigation, the result could well be increased brokerage transactions costs that would ultimately redound to the detriment of the investing public. Nothing in the Federal Arbitration Act or the various securities laws suggests that arbitral proceedings are inappropriate in this setting. *See Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 109 S.Ct.

1917, 104 L.Ed.2d 526 (1989) (holding that agreements to arbitrate claims under the Securities Act of 1933 are enforceable); *McMahon*, 482 U.S. at 238, 107 S.Ct. at 2343 (holding that claims under the Securities Exchange Act of 1934 are arbitrable).

### III.

Appellant raises numerous challenges to the arbitral decision in this case. We address each issue in turn.

### A.

■ Remmey's first line of attack focuses upon the arbitrators themselves. She claims that none of them were qualified to serve on the panel that heard her case. NASD Code of Arbitration Procedure § 19(b) requires that the majority of the panel members in controversies exceeding $30,000 "not be from the securities industry" unless the customer requests otherwise. Remmey maintains that potential arbitrators were required to complete questionnaires distributed by the NASD in 1990 in order to qualify as "public" arbitrators. She concludes that the failure of arbitrators Victor Schwimmer and Stanley Lewis to submit the 1990 questionnaires barred them from service on the arbitral panel, and thus that the award was obtained by "undue means" in violation of 9 U.S.C. § 10(a)(1).

This assertion is without merit. As an initial matter, both Schwimmer and Lewis presented suitable credentials to serve on the panel. Mr. Schwimmer is an attorney who worked several years for the Securities and Exchange Commission, nearly thirty years in private practice, and an additional thirteen years as an administrative law judge for the City of New York. Mr. Lewis served sixteen years as Deputy Securities Commissioner for the state of South Carolina. Prior to that, he worked as a securities examiner in the state's Securities Division and as a stockbroker. There can be little question that Messrs. Schwimmer and Lewis were qualified to address Remmey's claims against Marks and PaineWebber.

More significantly, nothing in the rules governing NASD arbitrations supports Remmey's contention. While she is correct in noting that § 23 of the NASD Code of Arbitration Procedure requires each arbitrator to disclose any interest in the outcome of the arbitration,[2] the Code does not make any mention of the 1990 questionnaire. In fact, appellant's counsel conceded at oral argument that no NASD rule required return of the questionnaire form. In order to overturn the award, Remmey must establish that a failure to complete the questionnaire impaired the ability of the arbitrators to render a fair decision. She has made no showing that failure to complete the questionnaire in any way resulted in a decision obtained by "undue means." *See* 9 U.S.C. § 10(a)(1).[3]

■ Appellant is even more critical of arbitrator Marshall Johnson, the so-called "industry" arbitrator. Remmey alleges that Johnson was disciplined by the NASD for noncompliance with the NASD's Rules of Fair Practice, and that Johnson failed to indicate this discipline on his arbitrator questionnaire. Indeed, in 1978, Johnson and his

---

**2.** Section 23 provides, in pertinent part:

(a) Each arbitrator shall be required to disclose to the Director of Arbitration any circumstances which might preclude such arbitrator from rendering an objective and impartial determination. Each arbitrator shall disclose:

(1) Any direct or indirect financial or personal interest in the outcome of the arbitration;

(2) Any existing or past financial, business, professional, family, or social relationships that are likely to affect impartiality or might reasonably create an appearance of partiality or bias. Persons requested to serve as arbitrators should disclose any such relationships that they personally have with any party or its counsel, or with any individual whom they have been told will be a witness. They should also disclose any such relationship involving members of their families or their current employers, partners, or business associates.

(b) Persons who are requested to accept appointment as arbitrators should make a reasonable effort to inform themselves of any interests or relationships described in Paragraph (a) above.

**3.** Remmey contends that Lewis may have been disqualified as a public arbitrator had he returned the questionnaire. This argument is based on pure speculation. We have no reason to characterize as an "industry arbitrator" someone whose professional career was largely spent in enforcing state securities laws.

brokerage firm, McDaniel Lewis & Co., agreed to a $500 fine for failing to keep the firm's books current, to liquidate several transactions, and to maintain adequate supervisory procedures. Johnson and his firm were fined again in 1980, in the amount of $1000, for placing identification labels over the names of managing underwriters in a number of offerings.[4]

Not surprisingly, the parties differ as to the significance of these infractions. Appellants contend they were major infractions. Appellees insist they were of a minor and technical nature, and point out that they all occurred more than twelve years before the arbitration proceedings even took place. We need not resolve that issue, however, because Remmey has not shown that these infractions affected Johnson's impartiality, thereby yielding an impermissible award. Section 23 of the NASD Code requires arbitrators to disclose information which would affect their ability to decide the case impartially, such as a financial interest in the outcome. Johnson fully disclosed information he believed relevant to Remmey's claim, namely that his children were then working for Prudential Bache, Marks' current employer. After this disclosure, Remmey did not exercise a peremptory challenge to Johnson, as she was permitted to do under the NASD's rules, *see* NASD Code of Arb. Proc. § 22, and she agreed to go forward with the arbitration. It would be improper to vacate an award as obtained by "undue means," 9 U.S.C. § 10(a)(1), when the information relating to Johnson's interest in the outcome was freely disclosed to Remmey before she gave her final consent to the process.

■ Even if appellant could demonstrate that Johnson's discipline in 1980 somehow affected his impartiality, she fails to provide us with a reason why this objection was not raised prior to the arbitration. Remmey obtained the information concerning Johnson's discipline pursuant to the NASD's "Public Disclosure Program." Although Remmey did not avail herself of this program until after the completion of the arbitration process, the program was at her disposal before the arbitration began and nothing prevented Remmey from using it before participating in the arbitration. By raising this claim only after obtaining an adverse decision, Remmey's actions appear to constitute the ultimate attempt at a second bite. If this challenge were sustained, nothing would stop future parties to arbitration from obtaining allegedly disqualifying information, going through with the proceedings, and then coming forward with the information only if disappointed by the decision.

### B.

■ Appellant next argues that the arbitral proceedings were conducted in a biased manner in violation of 9 U.S.C. § 10(a)(2) & (a)(3). In support of this contention, she claims that arbitrator Schwimmer, who chaired the panel, was especially solicitous of the defendants' wellbeing and made several comments throughout the proceedings indicative of his empathy for the defendants. She also points to an alleged *ex parte* communication between Schwimmer and the defendants' counsel.

In attempting to secure vacatur of the arbitral decision based on "evident partiality," appellant carries a significant burden. "It is well established that a mere appearance of bias is insufficient to demonstrate evident partiality. Arbitrators are not held to the ethical standards required of Article III judges . . . ." *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.,* 991 F.2d 141, 146 (4th Cir.1993) (citations omitted); *see also Health Servs. Mgmt. Corp. v. Hughes,* 975 F.2d 1253, 1264 (7th Cir.1992). Accordingly, appellant "must establish specific facts that indicate improper motives on the part of an arbitrator." *Peoples Sec.,* 991 F.2d at 146. Here, Remmey's evidence amounts to nothing more than an after-the-fact attack upon an arbitrator's informal manner. Arbitrators are not strapped to a single presiding style, any more than are judges. Schwimmer's

---

4. Regardless of whether NASD rules strictly require disclosure of an arbitrator's past NASD disciplinary infractions, it seems apparent that public confidence in the NASD arbitration process would be enhanced if such information were not only available to the parties, but was in fact actually conveyed to them.

attempt to create a relaxed atmosphere did not indicate a bias in favor of either party. A review of the record indicates that his style, although colloquial, was consistent throughout the proceedings. It was no more a sign of bias for Schwimmer to tell Mr. Marks to "enjoy a wedding" than it was for him to tell appellant's step-daughter she was "with friends." His humor—or attempts at humor—were even directed at himself.[5] There is no indication, however, that he took the proceedings less than seriously: he devoted five days to the introduction of evidence and sustained objections from both parties as to evidence and questions put forward by the other.

■ Appellant's evidence regarding alleged *ex parte* contacts is equally uncompelling. Remmey points chiefly to a statement made by Schwimmer regarding seating at the proceedings. Apparently, the number of people present in the motel hearing room led to crowded conditions. At one point, during cross-examination of plaintiff's expert witness, plaintiff's counsel asked if he could switch seats with defense counsel so that plaintiff's expert and the opposing attorney would not be so close to one another. In refusing the request for a seating change, Schwimmer commented that he had talked with the defendants' counsel, who "promised to be a good boy." Remmey's contention that this statement evidences a prejudicial *ex parte* conversation is unconvincing for two reasons. First, given Schwimmer's light-hearted style throughout the proceedings, it is unclear whether Schwimmer even had a conversation with defense counsel, and Remmey has failed to present any evidence that such a conversation occurred. Second, assuming that Schwimmer did engage in such a conversation, appellant has failed to show that any remarks regarding seating would have prejudiced her case. Failure to make such a showing bars vacatur of the arbitral award because "the party seeking a vacation of an award on the basis of ex parte conduct

must demonstrate that the conduct influenced the outcome of the arbitration." *M & A Elec. Power Coop. v. Local Union No. 702, Int'l Bhd. of Elec. Workers*, 977 F.2d 1235, 1238 (8th Cir.1992); *see also Employers Ins. of Wausau v. National Union Fire Ins. Co. of Pittsburgh*, 933 F.2d 1481, 1490–91 (9th Cir.1991); *Mutual Fire, Marine & Inland Ins. Co. v. Norad Reinsurance Co.*, 868 F.2d 52, 57 (3d Cir.1989). Indeed, the decision of who sits where during a proceeding is a classic discretionary call for a presiding officer. Remmey's attempt to elevate this innocuous matter into a basis for overturning the entire arbitral result is indicative of a scatter-shot attack on an adverse decision.

### C.

■ Appellant next claims that the award must be vacated because the arbitrators "manifestly disregarded" the law in reaching their decision. *See National Wrecking*, 990 F.2d at 961. She contends that Marks' actions—including churning her account and purchasing entirely unsuitable investments—were so blatantly illegal that the arbitrators must have ignored the law in failing to grant her a favorable award.

In making a claim based on "manifest disregard," an appellant once again shoulders a heavy burden. We have previously explained that an arbitration panel's interpretation of the law will not be reversed unless the " 'arbitrators understand and correctly state the law, but proceed to disregard the same.' " *Upshur Coals Corp. v. United Mine Workers of Am., Dist. 31*, 933 F.2d 225, 229 (4th Cir.1991) (quoting *San Martine Compania de Navegacion, S.A. v. Saguenay Terminals Ltd.*, 293 F.2d 796, 801 (9th Cir.1961)). Accordingly, a court's belief that an arbitrator misapplied the law will not justify vacation of an arbitral award. Rather, appellant is required to show that the arbitrators were aware of the law, understood it correctly, found it applicable to the case before them, and yet chose to ignore it in propounding their decision. *See National Wrecking*, 990

---

5. After one of appellant's witnesses testified that people's dispositions change as they grow older, Schwimmer, who was then 88-years-old, quipped "Nothing personal intended, I hope." Remmey makes much of Schwimmer's age, referring to it several times in her brief. At one point, she even contends that the appointment of an 88-year-old arbitrator was violative of due process. Despite these assertions, however, a review of relevant portions of the transcript shows that Schwimmer was on top of the proceedings.

F.2d at 961; *Folkways Music*, 989 F.2d at 111–12.

Remmey can make no such showing here. Over the course of five days, the panel heard evidence regarding the investments from both parties. Remmey argued to the arbitrators that she was an elderly woman, burdened with medical problems, and an easy target for Marks' manipulation. She contended that the investments purchased for her account were illiquid and excessively risky, and clearly conflicted with her goals of stability and income flow. She particularly stressed the inappropriateness of buying real estate limited partnerships for a woman of her age. Remmey further argued that her account was overtraded, and that proceeds from the sale of some investments were used to purchase substantially similar securities. Defendants responded by presenting evidence that the purchased investments were well-suited to Remmey. The limited partnerships, for example, met Remmey's stated goals because they had the potential both to generate income and to realize long-term appreciation. Defendants contended that Marks discussed each purchase with Remmey before it was made, and that Remmey was a resolute businesswoman who kept detailed ledgers of her investments and who visited the PaineWebber office on a weekly basis. Defendants presented further evidence that the purchased partnerships were well syndicated, that the annual turnover rate in the account was far below what courts have found indicative of churning, and that some investments were sold, not to purchase inappropriate securities, but because they were starting to generate a return of principal and, therefore, a drop in Remmey's income. Defendants also noted Marks' previously unblemished record—in his 34 years in the securities business, no one had brought a customer complaint against him prior to this action.

Thus, by the conclusion of the hearings, the arbitrators had substantial conflicting testimony which could support a decision for either of the parties. Appellant overlooks this fact and relies exclusively on testimony favoring her claims in concluding that the arbitrators ignored the law. Remmey fails to recognize that the arbitrators may well have chosen to credit evidence presented by defendants that the account was not churned, that the investments were suitable, that Remmey's liquidity was maintained, and that Remmey was competent to assess her investments. Given that the arbitrators were presented evidence upon which such conclusions could be based, we cannot simply assume that they ignored the law in reaching their conclusions.

### D.

Appellant's final challenges to the arbitration award are that it is void because it (1) violates public policy, and (2) fails to constitute a "mutual, final, and definite award" as required by 9 U.S.C. § 10(a)(4). Both of these arguments are without merit.

■ Remmey's public policy argument is again based on a onedimensional view of the evidence. Remmey argues that Marks' sale of limited partnerships to her without delivering current prospectuses was a violation of criminal law, *see* 15 U.S.C. § 77e, and therefore that the award in favor of Marks directly conflicts with a defined statutory mandate. What appellant fails to produce, however, is any evidence that the arbitrators found a violation of the securities laws. In a case such as this, where the arbitrators were presented with conflicting evidence on this point, there is no reason to assume that they accepted appellant's version of the facts. Rather, the arbitral award reflects the conclusion that Marks did not make the sales without first delivering current prospectuses. The arbitrators were free to reach this conclusion, and having done so, their award does not conflict with any established public policy.

■ Remmey's § 10(a)(4) argument also fails. The arbitral ruling states, quite unambiguously, that "All Claims of the Claimant, Louise Remmey, against Respondents, PaineWebber, Inc. and Arnold Marks, shall be and are hereby dismissed in all respects." This statement of an arbitral decision could hardly be more final and definite. *See Antwine v. Prudential Bache Sec., Inc.*, 899 F.2d 410, 413 (5th Cir.1990) (holding that a similar award satisfied the "mutual, final and definite" requirements). That the arbitrators' accompanying "Case Summary" did not mention all of Remmey's claims is of no moment

here. After all, the Supreme Court has held that arbitrators need not state reasons for reaching a particular result. *See United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 598, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). Remmey's § 10(a)(4) argument appears to be merely a final attempt to secure a second shot at a recovery.

## IV.

There is no doubt that the arbitrators in this case were presented with evidence that could have supported an award in favor of either of the parties. As a result, it is entirely understandable .that Remmey would be disappointed with their conclusion. It is not our function as a reviewing court, however, to revisit the arguments and evidence presented to the arbitrators. Rather, our role is limited to determining whether the arbitration process itself was flawed. Here, evidence of such a flaw is lacking, and therefore the arbitral result may not be disturbed.

For the foregoing reasons, the judgment of the district court denying appellant's motion to vacate the arbitration award is

*AFFIRMED.*