MARSHALL & COMPANY, INC.; Kentwood Brett Thackston; Marshall & Company Securities, Inc.; and Michael P. Marshall, Plaintiffs,

v.

Paul A. DUKE, individually, and as Trustee for Terri L. Strickland; Jean F. Duke; Paul A. Duke, Jr.; C. Hunter Tison; Laura D. Tison; Ruth Strickland; Herb Strickland; Jon A. Pirtle; Ronald G. Green; and Matthew H. Patton, Defendants.

Civil No. 1:94–cv–3494–JEC.

United States District Court, N.D. Georgia, Atlanta Division.

July 26, 1995.

Peter Wayne Schneider and Laura Hightower Robison, Rogers & Hardin, Atlanta, GA, for Plaintiffs.

William E. Sumner, Sumner & Anderson, Atlanta, GA, for Defendants.

## ORDER

CARNES, District Judge.

This case is presently before the Court on plaintiffs' Motion to Confirm Arbitration Award [1] and defendants' Motion to Vacate Arbitration Award [2]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that plaintiffs' motion should be

granted and that defendants' motion should be denied.

## BACKGROUND

Defendants brought claims against plaintiffs with the National Association of Securities Dealers ("NASD") in 1990 and 1991. Defendants' claims included alleged violations of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and of the federal RICO statute, 18 U.S.C. § 1964. Defendants also stated claims for breach of fiduciary duty under Georgia law. These claims were consolidated for arbitration pursuant to arbitration agreements signed by each of the defendants and defendants' claims were heard by an NASD arbitration panel.[1] The arbitration panel consisted of two attorneys and a securities professional. After a substantial period of discovery, opening statements and testimony began on February 13, 1992.

Originally, defendants named Marshall & Co., Inc. ("Marshall & Co."), Wheat First Securities, Inc. ("Wheat")[2] and K. Brett Thackston as respondents in the underlying claims. Later, each respondent amended his or her Statement of Claim to add Marshall & Co. Securities, Inc. ("Marshall Securities") and Michael P. Marshall as respondents. Thackston was a stockbroker at Marshall Securities who had handled defendants' accounts. Marshall was the president and one of the managing directors of Marshall Securities during all times relevant to this litigation.

Defendants pursued three basic theories of improper conduct in support of their claims,[3] all of which involved their investment in Central Corporation ("Central"), a Florida-based telecommunications company. They alleged that Marshall conspired with Atlanta businessman John D. Phillips to engineer a sham bankruptcy of Central in November of 1988 to the detriment of Marshall Securities' customers, including defendants. Defendants argued that Marshall's actions were motivated by a secret scheme to transfer defendants' equity interests to himself and his associates. Defendants further claimed that Thackston charged unlawful prices for Central stock and traded the same stock on behalf of himself and Marshall Securities in such a way as to create an undisclosed conflict of interest between himself and his customers, including defendants. Defendants specifically alleged that Thackston marked-up the price of the stock beyond the NASD's guidelines. Lastly, defendants claimed that Thackston misled them about Central's financial condition and that such misrepresentations prompted their repeated purchases of the stock from 1984–1989. Had Thackston been truthful, defendants assert, they would have sold their stock for a sizeable profit prior to the October of 1987 stock market crash.

Due in part to numerous adjournments, the arbitration proceedings continued until early 1994. The record indicates that defendants presented the testimony of nineteen witnesses in approximately fifty-eight sessions over a period of approximately two years. The arbitration record submitted to the Court contains approximately six thousand pages of transcripts and exhibits. Plaintiffs contended that, notwithstanding the exhaustive nature of the proceedings,

---

1. All defendants were represented by the same counsel during the arbitration and before this Court.

2. At the time defendants brought the arbitration, Marshall Securities had ceased operating as a broker-dealer and had previously sold a portion of its assets to Wheat. In a related declaratory judgment action that arose out of this arbitration, defendants had argued that Wheat was liable as a successor-in-interest to Marshall Securities. *See Wheat, First Sec. v. Green*, No. 1:90–CV–1977–ODE (N.D.Ga. filed Sept. 7, 1990). Ultimately, defendants' arguments in this regard were rejected and defendants' successor-in-interest claims were barred as a matter of law. *Id.* (Order of Mar. 17, 1992), 1992 WL 515343, *aff'd*,

993 F.2d 814 (11th Cir.1993). All of this collateral litigation took place while defendants' claims were pending before the arbitration panel and the panel stayed consideration of defendants' successor-in-interest claims pending resolution in the Court of Appeals. Thus, many of defendants' claims against Wheat were not considered by the arbitration panel.

3. The recitation of the nature of this litigation before the arbitration panel is of a summary nature and not intended to detail each and every allegation forwarded by defendants before the panel. Although some defendants stated additional claims, the main thrust of the arbitration may be summed-up by these three basic theories.

defendants failed to adduce any evidence to support their allegations and, thus, plaintiffs moved the arbitration panel for dismissal of defendants' claims on May 2, 1994.

After extensive briefing on the issues, the arbitration panel granted plaintiffs' motion in an interim order issued on August 9, 1994. In the August 9, 1994, order the arbitration panel indicated that it was considering the parties' submissions with respect to plaintiffs' (respondents' below) entitlement to attorneys' fees and requested further briefing from the parties before deciding. Subsequently, the parties filed lengthy memoranda regarding attorneys' fees and plaintiffs submitted evidentiary support for the amount of attorneys' fees and expenses they were seeking.

On December 23, 1994, the arbitration panel entered its Final Award. In its award, the panel restated its earlier dismissal of defendants' claims against plaintiffs and assessed $634,017.27 in attorneys' fees and expenses and $64,000 in forum charges against defendants. Following the panel's award, plaintiffs filed an application to confirm the ruling pursuant to Section 9 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9. In response to the petition, defendants filed a motion to vacate under § 10 of the FAA.

*DISCUSSION*

**I. Introduction.**

■ "Arbitration proceedings are summary in nature to effectuate the national policy of favoring arbitration, and they require 'expeditious and summary hearing, with only restricted inquiry into factual issues.'" *O.R. Sec., Inc. v. Professional Planning Assocs.,* 857 F.2d 742, 747–48 (11th Cir.1988) (quoting *Legion Ins. Co. v. Insurance Gen. Agency, Inc.,* 822 F.2d 541, 543 (5th Cir.1987) and *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 22, 103 S.Ct. 927, 940–41, 74 L.Ed.2d 765 (1983)). This Court's disposition with respect to defendants' Motion to Vacate is a summary procedure that is properly decided on the papers submitted by the parties and the party seeking vacatur bears the burden of setting forth sufficient grounds to vacate the award in his moving papers at the outset.

*Id.* at 746 n. 3, 748; FED.R.CIV.P. 78. "Accordingly, the Federal Arbitration Act presumes that reviewing courts will confirm arbitration awards and that the courts' review of the arbitration process will be severely limited." *Robbins v. Day,* 954 F.2d 679, 682 (11th Cir.1992), *overruled in part on other grounds, First Options of Chicago, Inc. v. Kaplan,* —— U.S. ——, ——, 115 S.Ct. 1920, 1926, 131 L.Ed.2d 985 (1995).

Section 10 of the FAA specifies the following grounds for vacating an arbitration award:

(1) Where the award was procured by corruption, fraud, or undue means.

(2) Where there was evident partiality or corruption in the arbitrators, or either of them.

(3) Where the arbitrators are guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). "The statute does not allow courts to 'roam unbridled' in their oversight of arbitration awards, but carefully limits judicial intervention to instances where the arbitration has been tainted in specified ways." *Robbins,* 954 F.2d at 683 (citations omitted). "Accordingly, parties may not seek a 'second bite at the apple' simply because they desire a different outcome." *Remmey v. PaineWebber, Inc.,* 32 F.3d 143, 146 (4th Cir.1994).

Defendants have asserted three grounds upon which the Court should vacate the panel's award in this case. Defendants assert that the arbitration panel is guilty of misconduct for refusing to grant any more adjournments in April of 1994 and for cutting off the presentation of plaintiffs' live testimonial evidence at that time. 9 U.S.C. § 10(a)(3). Defendants further assert that the panel exceeded its powers in the part of the Final

Award in which attorneys' fees were awarded to plaintiffs. 9 U.S.C. § 10(a)(4). Lastly, defendants assert that the award is "arbitrary and capricious" on its face and, thus, should be vacated pursuant to the judicially created "arbitrary and capricious" ground for vacatur. *See Robbins*, 954 F.2d at 683. Upon complete review of the arguments by the parties, the Court concludes that none of defendants' arguments provide a basis upon which the arbitration award may be vacated. Accordingly, the Court concludes that plaintiffs' Motion to Confirm should be granted and that defendants' Motion to Vacate should be denied.

## II. Guilt of Misconduct by the Panel.

 Pursuant to the FAA, a reviewing court may vacate an arbitration award if "the arbitrators were guilty of misconduct in refusing to postpone the hearing, ... or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(3). This statutory basis for vacatur does not, however, invite hindsight evaluations of the correctness of the judgment of an arbitration panel in managing the presentation of evidence during an arbitration. "An arbitrator enjoys wide latitude in conducting an arbitration hearing. Arbitration proceedings are not constrained by formal rules of procedure or evidence." *Robbins*, 954 F.2d at 685. Moreover, an "arbitrator is not bound to hear all the evidence tendered by the parties; he need only give each party the opportunity to present its arguments and evidence." *Id.* (citation omitted).

 As the Court reads § 10(a)(3) of the FAA, there are three general subcategories of arbitration panel misconduct that would justify vacatur: (1) misconduct in refusing to postpone the hearing(s); (2) misconduct in refusing to hear material evidence; or (3) any other "misbehavior" that prejudices any party's rights. Although it is not entirely clear from defendants' pleadings, they appear to argue that both the first and second bases for vacatur under § 10(a)(3) exist in this case. The Court notes, however, that it is arbitrator *misconduct* or *misbehavior* that warrants vacatur, not a difference of opinion with respect to the ideal resolution of procedural issues that arose during the course of an arbitration. Rather than direct the Court's attention to specific indicia of misconduct, defendants' arguments in support of vacatur invite the Court to conduct a searching review of the arbitration record and, in effect, second-guess the panel's judgments with respect to the scheduling of hearings and the presentation of evidence.

Upon review of the record and the arguments of the parties, the Court can discern no arbitrator misconduct that would warrant vacatur. Moreover, as plaintiffs' have ably argued, defendants have failed to demonstrate any prejudice from any actions taken by the panel with respect to refusing to grant any further adjournments in April of 1994. Plaintiffs have not directed the Court's attention to any evidence they would have adduced but for the refusal to continue the proceedings any further at that time.

With respect to the panel's refusal to continue the proceedings beyond April of 1994, "[t]he issue comes down to the question whether there was any reasonable basis for the arbitrators to refuse to postpone the hearing or to continue it in order to receive [additional witness] testimony." [4] *Schmidt v. Finberg*, 942 F.2d 1571, 1574 (11th Cir.1991). Defendants argue that the panel's decision was harsh, unfair and based upon the panel's erroneous perception that defendants were attempting to unduly delay the proceedings. Defendants' own argument contains a reasonable basis upon which the panel could have denied a continuance and, thus, is fatal to their claim of misconduct in refusing an adjournment.

Defendants' own argument concedes that the panel had adopted plaintiffs' position that defendants had unduly delayed the proceedings and simply refused to tolerate any further delay. In essence, defendants invite the

---

**4.** Plaintiffs have directed the Court's attention to evidence tending to indicate that defendants had only one additional witness to present at the time the panel refused any further continuance in the proceedings. According to this evidence, this testimony was estimated at approximately ½ of a day. Defendants have not disputed plaintiffs' assertions in this regard.

Court to review each and every delay during the course of an arbitration that lasted a total of five years and assess how much delay is attributable to plaintiffs, defendants and the panel itself. Then, defendants invite the Court to weigh in on the accuracy of the panel's perceptions on the issue of who was to blame for the extremely lengthy arbitration proceedings in this case. Although the Court declines to accept defendants' invitation, it does note that defendants repeatedly failed to meet their obligations with respect to hearings scheduled during late 1993 and early 1994. In fact, defendants had effectively sought an adjournment for the entire first half of 1994, after having failed to comply with the schedule they had agreed to for late 1993. Defendants apparently believe that the panel was obligated to grant unlimited adjournments due to defendants' counsel's scheduling conflicts.[5]

"Finally, the panel may have decided that the proceeding had already been protracted so long as to violate the policy of expeditious handling of such disputes." *Id.* At the time the panel refused defendants' request for adjournment in April of 1994, the arbitration had been ongoing for approximately four years and the panel had heard testimony over a period of two years. Additionally, the arbitration record in this case is voluminous and contains literally thousands of pages of testimony and exhibits. Defendants apparently wished to present the testimony of one more witness at the time the panel declined any further continuance. Given the lengthy proceedings and the voluminous record in this case, the panel may very well have determined that enough was enough. Based on this record, defendants cannot seriously argue that the panel's refusal to grant another adjournment effectively prevented them from being heard. Accordingly, the Court concludes that the panel's refusal to grant fur-

ther adjournments in April of 1994 does not provide a reason to vacate the panel's award.

■ Defendants further argue that the panel was guilty of misconduct due to its refusal to hear more testimonial evidence when it cut off the hearings before defendants had presented their last witness.[6] Defendants arguments in this regard fail. "A federal court may vacate an arbitrator's award under 9 U.S.C. § 10(a)(3) only if the arbitrator's refusal to hear pertinent and material evidence prejudices the rights of the parties and denies them a fair hearing." *Robbins*, 954 F.2d at 685. Arbitrators have wide latitude in conducting arbitration hearings and are not required to hear any and all evidence tendered by the parties. *Id.* "Thus, the [FAA] allows arbitration to proceed with only a summary hearing and with restricted inquiry into factual issues." *Id.*

As noted previously, defendants have failed to direct the Courts attention to any specific evidence they were prevented from presenting and have failed to demonstrate any prejudice arising from such a lack of evidence. Also as noted previously, defendants cannot seriously argue that they did not receive a fair opportunity to present their arguments and evidence. Additionally, as noted by plaintiffs, the panel invited and received extensive briefing from the parties with respect to its determination of plaintiffs' Motion to Dismiss all of defendants' claims after it cut off further hearings. Such an invitation provided all the parties with an opportunity to supplement the existing voluminous record with any additional argument or citation to evidence the parties felt was necessary. Accordingly, the Court concludes that defendants' Motion to Vacate should be denied to the extent defendants rely upon § 10(a)(3) of the FAA.

---

**5.** In this regard, the Court notes that it was not the unavailability of witnesses that was fueling defendants' repeated requests for adjournments in 1993 and 1994. Rather, it was conflicts with the schedule of defendants' primary counsel, Mr. Sumner, that kept getting in the way. As plaintiffs have pointed out, other attorneys within Mr. Sumner's firm had been involved, to some degree, in this litigation. Based upon the numerous delays caused by Mr. Sumner's repeated and lengthy adjournment requests, the panel may

very well have thought it was time for other attorneys in Mr. Sumner's firm to become more involved in the case in order to reduce the likelihood of further delay.

**6.** Defendant Paul A. Duke, Jr. further asserts that he was unable to present his evidence regarding his individual "churning" claims against plaintiffs and Wheat.

## III. Lack of Power to Award Attorneys' Fees.

Defendants assert that the portion of the Final Award granting attorneys' fees and expenses to plaintiffs should be vacated because the panel lacked the power to award such relief. Defendants rely upon § 10 of the FAA, which provides for vacatur "[w]here the arbitrators exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). In rendering its Final Award, the panel based its award on three different sources of power.

> First[,] the parties agreed to submit the issue of attorneys fees and expenses to the Panel so that an enforceable "bi-lateral agreement" exists. *See Matter of U.S. Offshore, Inc. (Seabulk Offshore, Ltd.),* 753 F.Supp. 86 (S.D.N.Y.1990). Second, the NASD rules and the Uniform Submission Agreement executed by Claimants provide for submission of all disputes by the parties to arbitration. Third, every judicial and quasi-judicial body has the right to award attorneys' fees under the common law bad faith exception to the "American Rule". *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *Dean Witter Reynolds, Inc. v. Bork,* 1991 WL 164465, 1991 U.S.Dis. LEXIS 11907 (E.D.Pa.1991). *See also* O.C.G.A. Section 9–15–14.

(Final Award at p. 8.)

Defendants argue that the first two cited bases of power do not exist and that the factual record in this case does not support an award of attorneys' fees under the third source. Defendants further argue that the panel's possible reliance upon either of the first two cited bases of power subjects any award of attorneys' fees to vacatur. Plaintiffs argue that the panel's recitation of sources of power was proper and that the panel in fact enjoyed the benefits of such sources of power. Upon complete review of the record and the arguments of the parties, the Court concludes that the panel's reliance upon the listed sources of power was proper.

"In light of the federal policy favoring arbitration at work here, [the Court's] task is to resolve all doubt in favor of the arbitrator's authority to award a particular remedy." *Willoughby Roofing & Supply Co. v. Kajima Int'l, Inc.,* 776 F.2d 269, 270 (11th Cir.1985) (*citing Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–942, 74 L.Ed.2d 765 (1983); and *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960)). This approach is fully consistent with the presumption of correctness afforded arbitration awards and the summary nature of court confirmation of such awards. In fact, the § 10(a)(4) prohibition against arbitrators' exceeding their powers "is to be accorded the 'narrowest of readings.'" *Blue Tee Corp. v. Koehring Co.,* 999 F.2d 633, 636 (2d Cir.1993) (*quoting Matter of Arbitration Between Andros Compania Maritima, S.A. and Marc Rich & Co., A.G.,* 579 F.2d 691, 703 (2d Cir.1978)). The Court will address each of the panel's asserted sources of power to award attorneys' fees in this case.

■ At the outset, the Court notes that defendants concede that arbitrators have the power to award attorneys' fees pursuant to the "bad faith" exception to the American Rule.[7] (Defs.' Reply Br. in Supp. of Mot. to Vacate at p. 20.) Rather than contest this source of power, defendants assert that any award pursuant to the bad faith exception would be arbitrary and capricious under the facts of this case. Defendants further assert that the panel's failure to apportion the attorneys' fees awarded among the various defendants was, in itself, arbitrary and capricious. Each of these arguments will be addressed separately in the Court's discussion of the defendants' arbitrary and capricious arguments.

---

7. Plaintiffs' argue vigorously that this one concession ends the Court's inquiry with respect to defendants' § 10(a)(4) challenge to the panel's Final Award. Plaintiffs contend that either the panel had the power or it did not. Having conceded at least one source of power, as defendants have done, plaintiffs argue that defendants' challenge to the other two recited bases of power is irrelevant. Although the Court is persuaded by the argument, it need not reach the issue, as it concludes that any and all of the recited bases of power were proper.

In challenging the other two sources of power recited by the panel, defendants assert that such a recitation necessarily implies that the panel granted attorneys' fees to plaintiff for an improper purpose. Defendants argue that the panels' recitation of the various sources of power available to the panel gives rise to an inference that the panel awarded attorneys' fees and expenses to plaintiffs merely because plaintiffs prevailed on the merits of the underlying arbitration. As defendants' theory goes, they sought attorneys' fees in their claims below pursuant to statutory authority allowing for prevailing claimants to receive such fees and expenses. Plaintiffs, on the other hand, sought attorneys' fees pursuant to the bad faith exception to the American Rule. Thus, defendants argue that the panel's Final Award indicates that the panel was somehow confused and may have awarded fees to plaintiffs without having concluded that the bad faith exception applied to defendants' claims.

■ The Court is at a loss with regard to defendants' arguments in this regard. Defendants themselves indicate that plaintiffs sought attorneys' fees from the panel based upon their assertion that defendants claims were frivolous and defendants had conducted the underlying litigation in bad faith and for improper purposes. Once the panel issued its interim order denying all of defendants' claims on the merits, it then sought further briefing from the parties with respect to plaintiffs' bad faith claim for attorneys' fees. The only issue before the panel at that point of the litigation, was whether plaintiffs' were entitled to their attorneys' fees *on the ground that such fees and expenses had been sought* in plaintiffs' counterclaims against defendants.

Rather than giving rise to an inference of confusion on the panel's part, the course of the arbitration makes it clear that the panel's consideration of plaintiffs' fee request was based upon the only ground plaintiffs had sought such fees. The panel requested a separate round of briefing on the fee issue *after* it had found for plaintiffs on the liability issues. The parties then responded by providing extensive briefing to the panel on the fee issue alone. Thus, the panel's consideration of the fee request was conducted in isolation and with the knowledge that plaintiffs had prevailed on the merits and with its own assessment of defendants' conduct of the litigation. The panel could not have made itself any clearer.

■ Contrary to defendants' assertions, the issue of attorneys' fees was properly before the panel. Prior to the arbitration, the parties had agreed to submit all disputes between them to arbitration. The uniform submission agreement executed by all parties expressly provides that the panel has the power to decide the controversy before it "as set forth in the attached statement of claims, answers, and all related counterclaims ... asserted." Defendants do not dispute that plaintiffs counterclaim submitted to the panel contained a claim for bad faith attorneys' fees against defendants. Moreover, *The Arbitrator's Manual,* which provides guidance for NASD arbitrators' decisions, provides that a panel may award fees in "an exceptional case." Defendants concede that this express grant of authority would provide a source of power upon which the panel could award bad faith attorneys' fees.[8] Accordingly, the Court concludes that the panel's recitation of the NASD rules and the submission agreements as sources of power was not in error.

Moreover, both plaintiffs and defendants had affirmatively sought an award of attor-

---

8. Defendants appear to argue that the exceptional circumstance language in the manual and the bad faith exception are coextensive and, thus, this purported base of power is somehow redundant. As this argument goes, defendants assert that the panel could not rely upon the submission agreement and the NASD rules of arbitration as an independent source of power because the panel could only award fees upon a proper finding of bad faith. The Court fails to comprehend the import of this argument. Defendants ex-

pressly concede that the panel had the power to award bad faith attorneys' fees pursuant to the NASD rules and, as discussed above, it appears that this is precisely what the panel did. Accordingly, the Court need not decide whether the NASD's "exceptional circumstances" rule and the "bad faith" exception to the American Rule are coextensive as a matter of law, as all the parties agree that bad faith litigation would fall within the "exceptional circumstances" upon which fees could be awarded.

neys' fees from the panel. Each side had made its claim pursuant to the proper bases for such awards to each side. Plaintiffs argue that, notwithstanding any other available source of power, such voluntary submissions indicate agreement by the parties to submit the issues to the panel for decision. *See Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp.*, 274 F.2d 805, 809 (2d Cir.1960); *Matter of Arbitration Between Reyes Compania Naviera S.A. and Manumante S.A.*, 649 F.Supp. 789, 792 (S.D.N.Y.1986). The parties *mutual* agreement to have any and all fee issues decided by the panel is evidenced by their joint submission of the issues to the panel.[9] Having agreed to have the fees issue decided by the panel, the parties will not now be heard to object that the panel lacked the power to decide the issues submitted. Accordingly, for all of the foregoing reasons, the Court concludes that the panel possessed the power to award attorneys' fees to plaintiffs in this case and that defendants' Motion to Vacate should be denied to the extent such motion is based upon 9 U.S.C. § 10(a)(4).

## IV. Arbitrary and Capricious Award?

■ In addition to the statutory grounds for vacatur, the Eleventh Circuit has also recognized an additional ground for awards that are "arbitrary and capricious", as the term has been rather narrowly construed. *Robbins*, 954 F.2d at 683; *Raiford v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 1410, 1411–12 (11th Cir.1990). In explaining when an award is "arbitrary and capricious", the Eleventh Circuit has stated that an award is such "only if 'a ground for the arbitrator's decision can[not] be inferred from the facts of the case.'" *Raiford*, 903 F.2d at 1413 (citations omitted). Such a limited definition is consistent with the presumption of correctness afforded arbitral awards. "Only after it is determined that there could be no proper basis for the award, should a court consider looking beyond the

[FAA] to determine the applicability of court made standards for the vacatur of an arbitration award." *Robbins*, 954 F.2d at 684.

■ Defendants challenge the attorneys' fees award in this case as arbitrary and capricious on two separate grounds. First, defendants assert that, on the facts of this case, such an award is without any rational basis in law or fact. Additionally, defendants assert that the panel's failure to apportion the fees among the various defendants indicates that the award is arbitrary and capricious. For the reasons stated below, the Court cannot conclude that the panel's award was arbitrary and capricious.

The course of this arbitration indicates that the defendants made a number of claims involving allegations of grossly improper conduct on the part of the plaintiffs. The claims involved alleged conspiracies, fraud, abuse of federal judicial process in the form of the filing and confirmation of a "sham" bankruptcy and a host of alleged conduct in violation of the federal securities laws. Defendant then proceeded to present voluminous testimonial and exhibit evidence in support of these claims of wildly unlawful conduct by the plaintiffs. As the proceedings dragged on, defendants repeatedly sought to gain a favorable settlement from plaintiffs but plaintiffs stood fast in their denials of any wrongdoing. Ultimately, as defendants' case was winding down in the arbitration, plaintiffs indicated that they wished to file a motion to dismiss all of defendants claims.[10] The panel then indicated that it was receptive to such a motion.

The parties filed lengthy and detailed memoranda in support and in opposition to plaintiffs' Motion to Dismiss defendants' claims. After considering these briefs and the evidence in the case, the panel concluded that defendants had failed to adduce any

---

9. Defendants argue, without any citation, that the attorneys' fees issues did not constitute a "joint" submission because the parties were seeking an award based upon different legal theories. The Court is not persuaded by this argument. The fact of the matter is that both parties sought fees. As defendants have noted, the only means for plaintiffs to have sought such fees was upon a finding of bad faith by defendants. Thus,

it is not surprising that plaintiffs did not seek fees on the same statutory grounds that defendants' fees claims were based upon.

10. Such a motion is similar to a motion made in federal court pursuant to Fed R.Civ.P. 52(c). The moving party seeks judgment at the close of the claimants' case.

evidence in support of any of their claims. Based on the lengthy discovery and extensive hearings in this case, it appears that the panel ultimately agreed with plaintiffs' theory of defendants' motivations for bringing this litigation in the first instance: that theory being that defendants' claims were frivolous from the outset and motivated by nothing more than a desire to coerce a favorable settlement out of plaintiffs.

As with their other arguments, defendants invite the Court to conduct a *de novo* review of the voluminous arbitration record to determine whether, in this Court's judgment, defendants presented colorable claims sufficient to escape an award of attorneys' fees. Defendants cite various arguably favorable comments made by members of the panel at various points in the transcript, as well as their own allegations from the original claims, then assert that an award of attorneys' fees against them must be arbitrary and capricious. Defendants' arguments in this regard ignore the course of this arbitration.

After lengthy discovery and numerous proceedings, the panel concluded that defendants had failed to present any evidence to support their numerous claims of serious misconduct. The panel observed the course of the proceedings, heard all the evidence and read the extensive briefing by the parties on the fees and expenses issue. Now defendants invite the Court to review all of this same matter and then substitute its own judgment for the judgment of the panel. Contrary to defendants' arguments, the Court is not permitted to "roam unbridled" through the record in its oversight of the arbitration process. *Robbins,* 954 F.2d at 683.

■■■ Although it is never expressly stated, defendants appear to imply that the panel's failure to explain its award in detail gives rise to an inference that the award itself is improper. Defendants have avoided making this argument more directly for good reason. It is well established that " 'the absence of express reasoning by the arbitrators [does not] support the conclusion that they disregarded the law.' " *O.R. Sec.,* 857 F.2d at 747 (*quoting Stroh Container Co. v. Delphi Indus., Inc.,* 783 F.2d 743, 750 (8th Cir.1986)).[11] Thus, to the extent that the panel awarded attorneys' fees and expenses against all defendants without apportioning the amount of fees owed by each defendant, such a lump sum award does not, in and of itself, give rise to the conclusion that the award was arbitrary and capricious.

The panel concluded that each and every defendant had failed to adduce any evidence in support of any of their claims. The panel appears to have concluded, as had been suggested to it by plaintiffs, that the defendants were joint venturers in what the panel concluded was frivolous, bad faith litigation that had been pursued for an improper purpose from the start. The Court will not now second-guess the judgment of the panel under the guise of a determination that the panel's action was "arbitrary and capricious". Accordingly, the Court concludes that defendants' Motion to Vacate should be denied in its entirety.

## CONCLUSION

For the foregoing reasons, petitioners' Motion to Confirm Arbitration Award [1] is **GRANTED** and Respondents' Motion to Vacate Arbitration Award [2] is **DENIED.** It is further ordered that the Clerk's office is directed to terminate this action.

11. The quoted authority discusses the judicially created "manifest disregard for the law" ground for vacatur that has been adopted by a number of circuit courts. Although the Eleventh Circuit has never expressly adopted the "manifest disregard for the law" basis for vacating an arbitration award, *O.R. Sec.,* 857 F.2d at 747, more recent precedent has blurred any distinction that may have existed between that ground and the "arbitrary and capricious" ground. See *Brown v. Rauscher Pierce Refsnes, Inc.,* 994 F.2d 775, 781 (11th Cir.1993) (holding that a court "may vacate an award as arbitrary and capricious when the award *exhibits a wholesale departure from the law.*" (emphasis added)). Accordingly, the citation to *O.R. Sec.'s* discussion of the manifest disregard for the law standard appears apt.