Henry **ROBERSON** and Marjorie Roberson, Petitioners,

v.

**CHARLES SCHWAB & CO., INC.** Respondent.

No. 03–80601–CIV–RYSKAMP.

United States District Court, S.D. Florida, West Palm Beach.

Sept. 29, 2003.

Jeffrey Roger Sonn, Jeffrey Erez, Sonn & Erez, Richard David Seay, Mager Shafer, Scott Alan Mager, Mager Law Group, Ft. Lauderdale, FL, for Plaintiffs.

Joseph Clay Coates, III, Greenberg Traurig Phillips Point, West Palm Beach, FL, for Defendant.

### ORDER DENYING PETITIONERS' MOTION TO VACATE ARBITRATION AWARD AND GRANTING RESPONDENT'S MOTION TO CONFIRM ARBITRATION

RYSKAMP, District Judge.

THIS CAUSE comes before the Court upon Petitioners' Motion to Vacate Arbitration Award [DE 1], filed July 3, 2003. Respondent filed its Response [DE 6] to Petitioners' Motion on August 11, 2003, and Petitioners' filed their Reply [DE 11] on August 22, 2003. The Respondent filed its Motion to Confirm Arbitration [DE 7] on August 11, 2003. On August 22, 2003, the Petitioners filed their Response [DE 12] to Respondent's Motion to Confirm. Respondent filed its Reply [DE 16] on September 5, 2003. The motions have been fully briefed and are ripe for adjudication.

### I. BACKGROUND

Petitioners Henry and Marjorie Roberson [hereinafter "Robersons"] request that the Court vacate the arbitration award denying them damages and ask that the Court award damages they allege are mandatory under FLA. STAT. § 517.211. Respondent Charles Schwab & Co., Inc. [hereinafter "Schawb"], requests that the Court confirm the arbitration award and also requests attorneys' fees pursuant to FLA. STAT. §§ 517.211(6) and 682.11.

In May of 1996, Schwab entered into an Investment Manager Service Agreement with Raborn & Co., Inc., naming the company an investment manager. (See Investment Manager Service Agreement in Respondent's Exhibit D). The agreement noted that Schwab was to execute orders

placed by Raborn & Co. or its clients, that Schwab would not review or monitor the decisions of Raborn & Co., and that Schwab did not have a duty to monitor Raborn & Co.'s clients' accounts or its compliance with applicable law. (*Id.*).. In addition, the Raborn & Co. was not to represent that it was affiliated with Schwab in any way. (*Id.*).

After viewing television ads and attending an informational seminar at their retirement community, the Robersons hired Douglas Raborn of Raborn & Co. to act as their financial advisor. (*See* Petitioners Exhibit A). The Robersons subsequently opened an account with Schwab on July 14, 2000. (*Id.*). In the Schwab Brokerage Account Application, the Robersons acknowledged that Schwab was merely to carry out transactions as directed by them or their investment advisor and that their investment advisor was not affiliated with or controlled by Schwab. (*See Schwab Brokerage Account Application* in Petitioners' Exhibit C). In addition, the Robersons also agreed that Schwab was not responsible for supervising any trading performed by either themselves or their investment advisor. (*Id.*).

According to the Florida Securities and Investment Protection Act, "[n]o dealer, associated person, or issuer of securities" can sell securities in Florida without being registered under Act. *See* FLA. STAT. § 517.12. In addition, "every person making the sale and every director, officer, partner, or agent of or for the seller" is jointly and severally liable for damages caused by an unregistered seller. *See* FLA. STAT. § 517.211(1). It is undisputed that Schwab is not "unregistered" under the Act. It is also undisputed that Douglas Raborn was not registered with the State of Florida when he acted as investment advisor for the Robersons. Under the advisement of Raborn, the Robersons suffered losses in excess of $600,000 dollars and paid commissions totaling over $50,000.00. (*See* Petitioners' Motion, at 4).

On April 1, 2002, the Robersons filed a Statement of Claim against Schwab with the National Association of Securities Dealers, Inc. (NASD). The Robersons alleged that Schwab was in violation of the Florida Securities and Investment Protection Act, FLA. STAT. ch. 517, because Schwab sold securities in transactions that involved Douglas Raborn, who was not registered with the State of Florida pursuant to FLA. STAT. § 517.12. The Robersons claimed that because this lack of registration violated the Act, and because those parties selling securities without a license are held liable under the Act, Schwab should be held liable for the damages the Robersons suffered.

The NASD denied all of the Robersons' claims in its April 8, 2003, award. The Robersons subsequently filed their Complaint and motion to vacate the award with this Court, claiming the arbitration award should be vacated because it was arbitrary and capricious and in manifest disregard of the law. Schwab then moved that this Court confirm the NASD award.

## II. DISCUSSION

### A. Standard of Review

■ Review of arbitration awards falls under the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–16, which presumes that arbitration awards will be confirmed. *Riccard v. Prudential Insurance Co.*, 307 F.3d 1277, 1288 (11th Cir.2002); *Brown v. Rauscher Pierce Refsnes, Inc.*, 994 F.2d 775, 778 (11th Cir.1993). "[C]ourts grant arbitrators considerable leeway when reviewing most arbitration decisions." *First Options of Chicago v. Kaplan*, 514 U.S. 938, 948, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). Arbitrators' decisions can be set

aside only in narrow circumstances. *Id.* at 943, 115 S.Ct. 1920; *Scott v. Prudential Securities, Inc.*, 141 F.3d 1007, 1014 (11th Cir.1998). As this Court has previously stated, "[c]ourts are expected to give great deference to arbitration awards." *First Preservation Capital, Inc., v. Smith Barney, Harris Upham & Co., Inc.*, 939 F.Supp. 1559, 1563 (S.D.Fla.1996).

 Under Section 10 of the FAA, an arbitration award may be vacated on four statutory grounds.[1] *Riccard*, 307 F.3d at 1289; *Scott*, 141 F.3d at 1014–15; *Montes v. Shearson Lehman Brothers, Inc.*, 128 F.3d 1456, 1459 n. 4 (11th Cir.1997); *Brown*, 994 F.2d at 778–79; *First Preservation*, 939 F.Supp. at 1563–64. When the arbitrators do not recite their rationale for an award, the court must determine if there is a rational basis for the award. *Brown*, 994 F.2d at 779; *First Preservation*, 939 F.Supp. at 1564. If no rationale is given by the arbitrators, and the reviewing court cannot find a rational basis for the award, the award may be vacated on three non-statutory bases: 1) the award is arbitrary and capricious; 2) enforcement of the award is contrary to public policy; and 3) the award was entered in manifest disregard of the law. *Riccard*, 307 F.3d at 1289 n. 9; *Scott*, 141 F.3d at 1017; *Montes*, 128 F.3d at 1459 n. 5; *Brown*, 994 F.2d at 779. Because the arbitrators in the Robersons' case did not delineate the reasons for their decision, this Court must first determine if a rational basis in the decision

can be found. Only if no rational basis exists can this Court then determine if the award was arbitrary and capricious or in manifest disregard of the law.

**B. Rational Basis**

 The party requesting vacatur of an arbitration award must refute every rational basis upon which the arbitrator could have relied. *Brown*, 994 F.2d at 779; *First Preservation*, 939 F.Supp. at 1564. Where a rational basis can be inferred, the non-statutory grounds are unavailable and the award should be confirmed. *Brown*, 994 F.2d at 779; *First Preservation*, 939 F.Supp. at 1564; *Huntsville Golf Development, Inc., v. Brindley Construction Co., Inc.*, 847 F.Supp. 1551, 1556 (N.D.Ala. 1992). Moreover, courts are generally prohibited from vacating arbitration awards on the basis of errors of law or interpretation. *Brown v. ITT Consumer Financial Corporation*, 211 F.3d 1217, 1223 (11th Cir.2000); *Scott*, 141 F.3d at 1014; *Montes*, 128 F.3d at 1460; *Ainsworth v. Skurnick*, 960 F.2d 939, 940 (11th Cir.1992); *First Preservation*, 939 F.Supp. at 1563. Likewise, an arbitration award does not lack a rational basis simply because it was founded upon errors of law or interpretation.

 This Court is thus faced with the question whether the arbitrators had a rational basis for deciding against the Robersons.[2] As previously stated, the party

---

1. Those grounds are 1) where the award was procured by corruption, fraud, or undue means; 2) where there was evident partiality or corruption in the arbitrators, or either of them; 3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; and 4) where the arbitrators exceeded their powers, or so imperfectly execut-

ed them that a mutual, final, and definite award upon the subject matter was not made.... 9 U.S.C. § 10. The Robersons have raised none of these claims, and therefore these statutory grounds will not be discussed.

2. Whether or not this Court thinks the arbitrators decided correctly is not the point; the only question that matters at this point in the discussion is whether the arbitrators could have had a rational basis for deciding the

seeking vacatur, here the Robersons, must refute every rational basis upon which the arbitrators could have relied. The Robersons, however, did not even attempt to refute the rationality of the award, except by way of arguing that the award was arbitrary and capricious and in manifest disregard of the law. But as already noted, such non-statutory arguments cannot even be taken into consideration unless it is first established by the Robersons that there was no rational basis for the award. Thus, the Robersons have not met their burden.

 Even if these claims could be construed as attacking the rational basis of the award, the Robersons' arguments center around the arbitrators' interpretation of the Florida Securities and Investment Protection Act and case law. For example, whether or not Schwab was a "seller," made "sales," or was included in the phrase "every person making a sale" in the Act is clearly a matter of statutory interpretation. (*See generally* Petitioners' Motion, at 8–12; Petitioners' Response, at 1). In fact, the Robersons go so far as to delve into the plain and obvious meaning of the statute, along with considering the legislature's intent. (*See* Petitioners' Motion, at 12–17). This is quite obviously an attempt to argue their interpretation of the Florida statute.

To supplement their arguments regarding the interpretation of the statute, the Robersons use several cases to bolster their claim that they should receive mandatory damages under the Act. However, not one of these cases dealt with a situation like the one at hand. For example, the Robersons rely heavily on *Ainsworth v. Skurnick,* 960 F.2d 939 (11th Cir.1992). However, in that case the party sued was the unregistered party; but here the Robersons are suing the registered party.[3] In fact, none of the cases cited by the Robersons deal with a party in Schwab's position.[4] Instead, each concerns the actual wrong-doer. Here, the Robersons skipped over the intermediary, Raborn, who actually committed the wrong. This is not to say that none of these cases could be expanded upon or interpreted as the Robersons desire, but that the arbitrators had a rational basis not to do so. Interpreting cases narrowly certainly is a rational basis upon which to decide a claim.

These differences between the case law cited and the situation at hand indicate that the arbitrators may have decided as they did because there was no previous case directly on point. Thus, the decision was left to their interpretation of the Act and the case law. Not only are interpretations of law not a basis for vacating an

award as they did. Thus, the Court declines to rule on whether the arbitrators correctly determined the issues.

3. In *Ainsworth,* the court quoted Skurnick, the unregistered investment adviser, as stating:

"I served as an introducing broker and I opened up the account for Mr. Ainsworth. I furnished the clearing firm the document which they required and his name and address. And they were responsible for the safety of the securities and money and sending him confirmations and monthly statements. And basically I was responsible for the handling of the account."

*See Ainsworth,* 909 F.2d at 461. This relationship between Ainsworth and Skurnick resembles that between the Robersons and Raborn, and the relationship between Ainsworth and the clearing firm resembles that between the Robersons and Schwab. It is telling that Ainsworth was not suing the clearing firm in *that case.*

4. None of the cases even imply that an entity in Schwab's position qualifies as a "director, officer, partner, or agent of or for the seller" as is required for joint and several liability under FLA. STAT. § 517.211(1).

arbitration award, but such differences in the way the Act and the cases can be interpreted show that the arbitrators may have had a rational basis for deciding as they did. In summary, such arguments do not show the requisite lack of a rational basis, and courts are prohibited from vacating arbitration awards on the basis of errors of law or interpretation.

## C. Non–Statutory Grounds

Because the Robersons failed to meet their burden in refuting any rational basis the arbitrators might have had, the Court refrains from deciding the non-statutory claims.

### III. CONCLUSION

THIS COURT, being fully advised, and having considered the pertinent portions of the record, hereby

ORDERS AND ADJUDGES that Petitioners' Motion to Vacate Arbitration Award [DE 1] is DENIED, and Respondent's Motion to Confirm Arbitration [DE 7] is GRANTED.