[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-15631
Non-Argument Calendar
_____

D.C. Docket No. 5:14-cv-01358-IPJ


DALTON JOHNSON,
individually,
ALABAMA WOMEN'S CENTER FOR
REPRODUCTIVE ALTERNATIVES LLC,

                                                    Plaintiffs - Appellees,

versus

DIRECTORY ASSISTANTS INC.,
a Connecticut Corporation doing
business in Alabama,

                                                    Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(August 20, 2015)

Before HULL, ROSENBAUM, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Directory Assistants, Inc. ("DAI") appeals the district court's decision to vacate an arbitration award against the Alabama Women's Center for Reproductive Alternatives ("AWCRA") and Dalton Johnson (collectively, "plaintiffs"). After careful review, we vacate the district court's order and remand for further proceedings.

I.

DAI is an advertising consulting company. In 2009, Dalton Johnson, AWCRA's administrator, signed a contract with DAI to have the company take over and manage AWCRA's advertising activity. Mr. Johnson wrote on the contract that he was signing on behalf of "Alabama Women's Center L.L.C." The parties agree that no such organization is registered to do business in Alabama. Mr. Johnson asserts that he was actually signing on behalf of AWCRA, but he shortened the organization's name because of limited space on the contract. The contract included an arbitration provision, which read in part:

> [W]e both agree to resolve any dispute arising out of or relating to this contract through confidential binding arbitration and agree to try to mutually choose the arbitration service, the location and which state's law will govern. If we are unable to come to a mutual agreement, or if one of us refuses to participate in choosing, the party filing the demand will have the right to make the choices unilaterally, as long as the filing party has made a good faith attempt to come to a mutual

2

agreement.  The non-filing party expressly consents to and waives any and all objections to the choices made.

Doc. 13-1 at 2.

The plaintiffs assert that DAI's services were unsatisfactory.  They allege that they communicated their dissatisfaction, but DAI refused to provide a solution.  The plaintiffs ceased paying DAI in the second year of the contract.  Subsequently, on February 27, 2013, DAI's representative David Ford emailed Mr. Johnson in an attempt to agree on a location for arbitration to settle the dispute between the parties.  Mr. Ford stated that he wanted to arbitrate in Connecticut under Connecticut law, but he would be willing to arbitrate in an equidistant location, such as Raleigh, North Carolina.  Mr. Ford further stated that because Mr. Johnson "ha[d] not been very responsive in our efforts to work this out," DAI would give him until March 5, 2013 to respond.  Doc. 13-4.  If he did not do so, then DAI would move forward with unilaterally selecting the arbitration location and governing law, as provided in the contract.

The following day, Mr. Ford discussed the matter with the plaintiffs' attorney.  The parties failed to agree on an arbitration location, and Mr. Ford reiterated his deadline of March 5 in a follow-up email to the attorney.  The email also included a detailed case study of another arbitration that DAI had won.  On March 11, Mr. Ford emailed the plaintiffs' attorney, asking if she intended to

respond regarding an arbitration location.  A few hours later, counsel replied that a response was forthcoming.

By April 1, 2013, the attorney still had not communicated a response from Mr. Johnson.  Mr. Ford stated in an email that if he did not hear from Mr. Johnson by April 3, DAI would move forward with filing an arbitration action.  The plaintiffs' counsel responded that "medical emergencies . . . ha[d] prevented the gathering of documentation," but she would communicate a response as soon as she received the remaining documents from Mr. Johnson.  Doc. 13-11.  On April 17, Mr. Ford again emailed the attorney and stated that if there was no resolution of the arbitration forum by April 25, DAI would choose the forum unilaterally.  When the attorney did not respond, on April 22, Mr. Ford told her that DAI would be filing an arbitration demand that week.  Again, the attorney did not respond.

On November 1, 2013, DAI filed a demand for arbitration with the Alternative Dispute Resolution Center ("ADRC").  Mark V. Connolly was chosen as the arbitrator, and he disclosed that he had served as an arbitrator in a dispute involving DAI approximately five years earlier.  The plaintiffs challenged Mr. Connolly, asking that he be replaced because of his prior experience with DAI.  The ADRC denied this request because, after reviewing the record, "[Mr. Connolly] does not believe, nor do we, that his disclosure is of a material nature or would affect his impartiality or judgment . . . in the instant case."  Doc. 18-5 at 1.

Subsequently, the plaintiffs participated in the arbitration by filing an answer and counterclaims,[1] objecting to DAI's unilateral selection of the arbitrator and arbitration location, and participating in two preliminary conferences with the arbitrator.

In an initial ruling, the arbitrator determined that DAI had attempted to negotiate the terms of arbitration in good faith and that the matter could proceed to a hearing. The hearing was scheduled for March 3 and 4, 2014, but on February 27, the plaintiffs' attorney requested a continuance. The hearing was moved to April 14 and 15. On April 7, the arbitrator received a letter from the plaintiffs' attorney stating that "due to extraordinary circumstances and the current state of affairs surrounding [the plaintiffs'] industry," the plaintiffs were "not able to continue with the arbitration of this matter." Doc. 17 at 62. The attorney did not request a continuance. The arbitrator determined that he could continue the arbitration *ex parte*, pursuant to Rule 18 of the ADRC's Commercial Rules. The hearing took place on April 14. DAI appeared by counsel and presented evidence to support its claim of breach of contract.

The arbitrator issued his decision on April 21, 2014, concluding that the plaintiffs breached their contract with DAI. The arbitrator awarded DAI $51,999.36 in liquidated damages, $39,000.00 in late fees, $877.75 in hearing

---

[1] The counterclaims did not proceed to arbitration because the plaintiffs failed to pay the required arbitration fees.

5

exhibit expenses, and $7,795.30 in arbitration costs and fees.  The total award was $99,672.41.

The plaintiffs filed this case against DAI in the Circuit Court of Madison County, Alabama.  The complaint included claims of fraud, breach of contract, and misrepresentation, as well as a request to vacate the arbitration award issued by the ADRC.  DAI removed the case to federal district court based on the diversity of citizenship of the parties.  DAI then filed a motion to compel arbitration of the plaintiffs' three counterclaims.  The district court held a hearing on the motion but deferred ruling until the court could resolve the plaintiffs' request to vacate the arbitration award.  The court requested that the parties brief the issue of whether the award should be vacated.

The plaintiffs filed a brief arguing that the arbitration award should be vacated.  The defendants filed their opposition, arguing in part that the plaintiffs' request to vacate the award was procedurally improper because it was not made in the form of a motion.  The district court issued an order construing the plaintiffs' request to vacate the award, included in their complaint, as a motion to vacate. The district court also decided that the parties needed "one more 'bite' at the proverbial apple" and ordered further briefing on the plaintiffs' motion to vacate. Order, Doc. 14 at 5-6.

After the parties filed additional briefs, the district court released the order that is the subject of this appeal.  The court granted DAI's motion to compel arbitration of the plaintiffs' counterclaims.  The court further granted the plaintiffs' motion to vacate the arbitration award based on the court's finding that the arbitrator was biased.  DAI appealed the district court's grant of the motion to vacate.

## II.

In considering the district court's decision on the motion to vacate the arbitration award, "we accept the district court's findings of fact to the extent they are not clearly erroneous and review questions of law *de novo*."  *Scott v. Prudential Sec., Inc.*, 141 F.3d 1007, 1014 (11th Cir. 1998), overruled in part on other grounds by *Hall Street Assocs., L.L.C v. Mattell, Inc.*, 552 U.S. 576 (2008).

## III.

### A.

The Federal Arbitration Act ("FAA") imposes strict procedural requirements on parties seeking to vacate arbitration awards.  DAI argues that the plaintiffs' request to vacate the award was procedurally barred because the request appeared in the complaint, rather than in a separate motion.  DAI is correct that the FAA generally requires parties to make a motion to vacate an award.  9 U.S.C. § 6.  However, in *O.R. Securities, Inc. v. Professional Planning Associates, Inc.*, 857

F.2d 742 (11th Cir. 1988), we affirmed a district court's decision to consider a request to vacate made in a complaint, rather than a motion. We noted that the Federal Rules are liberal, such that "an erroneous nomenclature does not prevent the court from recognizing the true nature of a motion," and that the parties had adequately briefed the issue of vacatur before the district court. *Id.* at 746. This case is on all fours with *O.R. Securities*, especially considering the lengthy briefing on this issue that the parties submitted to the district court. While the plaintiffs improperly included their request to vacate the arbitration award in their complaint, it was not error for the district court to construe the request as a motion.

## B.

Next, DAI challenges the district court's decision to vacate the arbitration award. "There is a presumption under the FAA that arbitration awards will be confirmed, and federal courts should defer to an arbitrator's decision whenever possible." *Frazier v. CitiFinancial Corp., LLC*, 604 F.3d 1313, 1321 (11th Cir. 2010) (internal quotation marks omitted). The FAA provides four circumstances where it is appropriate for a court to vacate an arbitration award:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been

8

prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

While several judicially-created bases for vacatur had developed in this circuit over the past few decades, we held in *Frazier* that such grounds are no longer valid in light of the Supreme Court's decision in *Hall Street*. *Frazier*, 604 F.3d at 1324.[2] Thus, the grounds for vacatur listed in § 10(a) are exclusive.

The district court vacated the arbitration award under § 10(a)(2) because it found evident partiality on the part of the arbitrator. "[A]n arbitration award may be vacated due to the 'evident partiality' of an arbitrator only when either (1) an actual conflict exists, or (2) the arbitrator knows of, but fails to disclose, information which would lead a reasonable person to believe that a potential conflict exists." *Univ. Commons-Urbana, Ltd. v. Universal Constructors, Inc.*, 304 F.3d 1331, 1339 (11th Cir. 2002). The district court apparently based its decision on the first ground, the existence of an actual conflict. The court's opinion further suggests that the arbitrator was biased because the arbitrator: (1) found that DAI attempted in good faith to agree to an arbitration location and applicable law; (2) conducted an *ex parte* hearing, while writing an arbitration award that suggested

---

[2] In accordance with *Frazier*, we must reject that plaintiffs' argument that they have established non-statutory grounds for vacatur.

9

AWCRA was present at the hearing;[3] (3) held Mr. Johnson and a non-party to the contract (AWCRA) liable; and (4) improperly used the liquidated damages provision to calculate damages.

On appeal, the plaintiffs concede that they "have not alleged that there was an actual conflict" on the part of the arbitrator. Appellees' Br. at 14. Rather, they argue that the arbitration award should be vacated under § 10(a)(2) because "[t]he arbitrator and ADRC both refused to provide information to [plaintiffs] regarding how many arbitrations the service had conducted with DAI in the past," which "created a reasonable impression of bias in [the plaintiffs]."[4] *Id.* at 15.

The plaintiffs have not pointed to any part of the record showing when or how they requested additional information from ADRC. Our independent

---

[3] The district court found that the arbitrator "allow[ed] his opinion to suggest that the plaintiffs were present but simply failed to object to the defendant's evidence." Doc. 21 at 12-13. However, the arbitrator's decision contains an entire section entitled "Respondents' Notice of Not Attending the Hearing," which describes in detail the plaintiffs' letter notifying the arbitrator that they would not continue with the proceeding, and notes that the arbitrator "ruled . . . that the arbitration hearing would proceed . . . on an *ex parte* basis." Doc. 13-14 at 9. To the extent the district court found that the arbitrator attempted to conceal the *ex parte* nature of the hearing, we reject that finding as clear error.

[4] The plaintiffs make two other arguments in this vein: (1) that the ADRC failed to properly investigate their objections to Mr. Connolly, the arbitrator, and (2) that the arbitration award should be vacated because the ADRC, rather than Mr. Connolly personally, disclosed that Mr. Connolly had previously served as an arbitrator in a dispute involving DAI. As to the first argument, the plaintiffs merely state, without elaboration or citation, that the ADRC's investigation did not follow the organization's own rules or FAA procedures. The plaintiffs fail to explain how the investigation was improper or how its impropriety would justify vacating the arbitration award. Accordingly, we reject this argument. As to the second argument, the plaintiffs waived it by failing to raise it in the district court. *See Ramirez v. Sec'y*, 686 F.3d 1239, 1249 (11th Cir. 2012). Even if we were to consider the argument, however, we would find it has no merit. Assuming arguendo that it matters whether the source of disclosure is the arbitrator or the arbitration service, the argument is contradicted by the record, which shows that the plaintiffs received a disclosure form personally completed by the arbitrator.

10

examination of the record has not revealed any such evidence.  But even if the plaintiffs could show that they asked the ADRC to disclose how many times DAI had used the arbitration service, we are unconvinced that the failure to disclose that information would justify vacatur.  The §10(a)(2) inquiry focuses on whether "the undisclosed facts create a reasonable impression of partiality." *Lifecare Int'l v. CD Medical*, 68 F.3d 429, 433 (11th Cir. 1995) (internal quotation marks omitted).  Assuming DAI had used the ADRC to conduct several arbitrations, we do not think this fact alone would lead a reasonable person to suspect partiality, especially because the ADRC uses a variety of arbitrators.  Given the lack of evidence supporting the plaintiffs' argument under § 10(a)(2), we cannot affirm the district court's order on this basis.

## C.

The plaintiffs next argue that the arbitration award is due to be vacated under § 10(a)(3) because the arbitrator failed to postpone the hearing.  "[A] mere difference of opinion between the arbitrators and the moving party as to the correct resolution of a procedural problem will not support vacatur under section 10(a)(3)." *Scott*, 141 F.3d at 1016.  "[W]e must decide whether there was any reasonable basis for failing to postpone the hearing to receive relevant evidence." *Id.* (internal quotation omitted).  In *Scott*, the appellant argued that he could not attend the arbitration hearing because "the demands of ongoing litigation in Miami

11

required his presence there." *Id.* We held that this was not a compelling excuse because the appellant was under no court-ordered obligation to remain in Miami, and "self-imposed scheduling obstacles . . . do not require an arbitrator to postpone a hearing." *Id.*

Here, the plaintiffs argue that they could not attend the hearing "due to financial constraints caused [] by the services of DAI which caused a decline in Johnson and AWCRA'[s] business and the current state of Johnson and AWCRA'[s] industry." Appellees' Br. at 17. The plaintiffs presented no evidence to support this claim of financial hardship. Moreover, the plaintiffs did not provide this excuse to the arbitrator; they merely stated that they could not attend "due to extraordinary circumstances and the current state of affairs surrounding [the plaintiffs'] industry." Doc. 17 at 62. The plaintiffs never requested that the hearing dates be moved. Their letter simply informed the arbitrator that the plaintiffs would no longer participate in the arbitration. Under these circumstances, where a party participated in an arbitration proceeding only to withdraw a week before the hearing with little explanation and no request for extension, vacatur is inappropriate under § 10(a)(3) for a failure to postpone a hearing.

The plaintiffs also argue for vacatur under § 10(a)(3) because, they allege, the arbitrator failed to consider evidence that the plaintiffs had put forth prior to the

12

arbitration hearing.  Vacatur is appropriate where the arbitrator refuses to consider evidence "pertinent and material to the controversy."  9 U.S.C. § 10(a)(3). Unfortunately, the plaintiffs have not identified the evidence the arbitrator purportedly failed to consider, much less shown why any such evidence was pertinent or material to the case.  Their brief states only that the plaintiffs submitted "documents and correspondence" and baldly asserts that the arbitrator did not consider this evidence.  Appellees' Br. at 18.  We can determine neither what these documents said nor whether the arbitrator in fact considered them. Accordingly, we reject the plaintiffs' argument.

### D.

Finally, the plaintiffs argue that vacatur is justified under § 10(a)(4)[5] because the arbitrator exceeded his powers by (1) ruling that DAI had attempted to negotiate the terms of arbitration in good faith and (2) granting DAI an exorbitant award.  To vacate an award under § 10(a)(4), "[i]t is not enough to show that the arbitrator committed an error — or even a serious error."  *Oxford Health Plans LLC, v. Sutter*, 569 U.S. __, 133 S. Ct. 2064, 2068 (2013) (alterations and internal quotation marks omitted).  "[A]n arbitral decision even arguably construing or applying the contract must stand, regardless of a court's view of its (de)merits." *Id.* (internal quotation omitted).  "So the sole question for us is whether the

---

[5] The parties agree that § 10(a)(1), which allows for vacatur of an award procured by corruption, fraud, or undue means, does not apply to this case.

13

arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." *Id.*

The arbitrator's rulings here do not meet this standard. First, the arbitrator clearly was construing the contract's arbitration provision when he found that DAI made good faith attempts to agree to arbitration terms. Notably, the finding is also supported by the record, which shows that DAI attempted to come to an agreement with the plaintiffs several times, despite the plaintiffs' non-responsiveness. Second, the arbitrator applied the contract when he used its liquidated damages provision to calculate the arbitral award. Because both of these rulings were derived from the contract, the arbitrator's actions did not exceed the scope of his power. Although the district court's disagreement with the arbitrator's decisions is evident in the court's ruling that DAI failed to act in good faith and that the liquidated damages clause was a penalty under Alabama law, mere disagreement with an arbitrator's legal or factual determinations does not justify vacatur under § 10(a)(4).

## IV.

Because the plaintiffs have failed to show that any of the circumstances enumerated in 9 U.S.C. § 10(a) are present here, we vacate the district court's grant of the motion to vacate the award. We remand to the district court for further proceedings consistent with this opinion.

14

**VACATED AND REMANDED.**